540 P.2d 250

**James STULL, Plaintiff-Appellee,**

v.

**CITY OF TUCUMCARI, a Municipal Corporation, Defendant-Appellant.**

**No. 1809.**

Court of Appeals of New Mexico.

Aug. 13, 1975.

Certiorari Denied Sept. 11, 1975.

Robert M. Rowley, Tucumcari, for defendant-appellant.

Raymond Villani, Tucumcari, for plaintiff-appellee.

OPINION

WOOD, Chief Judge.

The trial court held Tucumcari liable for the fraud of its city manager. The dispositive issues concern the basis for holding Tucumcari liable. We discuss: (1) Section 14–9–7, N.M.S.A.1953 (Repl.Vol. 3); (2) Sections 5–6–18 through 5–6–20, N.M. S.A.1953 (Repl.Vol. 2, pt. 1); and (3) liability of a municipality for torts of an employee.

The trial court's findings are not challenged. It found that Tucumcari's City Commissioners authorized the city manager to discuss with plaintiff the acquisition of certain property "and to report back to the said City Commission the results of said discussion * * *." Discussions were held. They culminated in an agreement for a trade, subject to the approval of the City Commission. Tucumcari would accept certain real estate from plaintiff and pay for it by releasing paving liens on certain other property of plaintiff.

Subsequently, the city manager informed plaintiff that the City Commission had ac-

cepted the trade. This statement was false, the city manager knew the statement was false at the time he made the statement. The city manager made the statement with the intent that plaintiff rely thereon and plaintiff did rely on the statement, to his damage. Thus, the unchallenged finding is that the city manager committed fraud. *Prudential Insurance Company of America v. Anaya*, 78 N.M. 101, 428 P.2d 640 (1967).

*Section 14–9–7, supra.*

Section 14–9–7, supra, provides:

"No personal action shall be maintained in any court of this state against any member or officer of a municipality for any tort or act done . . . when done by the authority of the municipality or in execution of its orders. In all such cases, the municipality shall be responsible."

▪ Defendant asserts plaintiff's complaint should have been dismissed because plaintiff did not plead that the fraud was done by the authority of the municipality or in execution of its orders. *Valdez v. City of Las Vegas*, 68 N.M. 304, 361 P.2d 613 (1961). Plaintiff, in effect, contends that he had a claim for relief independent of this statute. We do not concern ourselves with the pleading. The trial court did not find that the city manager's fraud was done by the authority of Tucumcari or in execution of its orders. Having reviewed the record, there is no evidence to support such a finding even if it had been made. Plaintiff cannot hold Tucumcari liable for the fraud of its city manager under § 14–9–7, supra. *Montoya v. City of Albuquerque*, 82 N.M. 90, 476 P.2d 60 (1970).

*Sections 5–6–18 through 5–6–20, supra*

Plaintiff claims he is entitled to recover under these sections. He is not.

▪ Section 5–6–18, supra, states the purpose of the act is to provide a means for recovery of damages "resulting from the employer's or employee's *negligence,* which occur during the course of employ-

ment * * * ." (Our emphasis.) Plaintiff's complaint alleged both an intentional misrepresentation and a negligent misrepresentation. The trial court did not find negligence, it found the intentional tort of fraud. Section 5–6–18, supra, does not apply to the city manager's fraud. *Orrs v. Rodriguez*, 84 N.M. 355, 503 P.2d 335 (Ct. App.1972).

Section 5–6–20, supra, provides that no judgment shall run against a city "unless there be liability insurance to cover the amount and cost of such judgment." Although the trial court made no finding on the question of insurance, the uncontradicted evidence is that Tucumcari's liability insurance did not cover the city manager's fraud.

Under either of the above reasons, plaintiff cannot hold Tucumcari liable under §§ 5–6–18 through 5–6–20, supra.

*Liability for Torts*

Plaintiff asserts he has a right to recover which is independent of any statutory provision. That right, he contends, is that municipalities are liable for torts committed in the exercise of corporate or proprietary functions. *Barker v. City of Santa Fe*, 47 N.M. 85, 136 P.2d 480 (1943). Such a basis for relief existed at common law. The several statutes discussed in the decisions appear to be directed to liability for torts committed in the exercise of governmental functions because liability for torts committed in the exercise of corporate or proprietary functions existed apart from those statutes. See *Galvan v. City of Albuquerque*, 87 N.M. 235, 531 P.2d 1208 (1975); *City of Albuquerque v. Garcia*, 84 N.M. 776, 508 P.2d 585 (1973); *Montoya v. City of Albuquerque*, supra; *Baca v. City of Albuquerque*, 19 N.M. 472, 145 P. 110 (1914).

Tucumcari's position is that since the enactment of §§ 5–6–18 through 5–6–20, supra, plaintiff's right of recovery must be based on these statutory provisions. It relies on the following:

(a) The provision in § 5–6–20, supra, stating no judgment shall run against a

city unless there is liability insurance to cover the judgment.

(b) The statement in *City of Albuquerque v. Garcia,* supra, that:

"Even as to torts committed in pursuance of proprietary functions, immunity was not simply created by the statute, although by compliance with it a procedure which amounts to about the same thing is brought about."

(c) The statement in *Galvan v. City of Albuquerque,* supra, that:

"Neither statute permits any situation to arise in which the state or its political subdivisions could suffer any real liability since any judgment has to be limited to the policy limits."

Tucumcari's argument indirectly raises the question of whether §§ 5–6–18 through 5–6–20, supra, impliedly abolished the common law rule of municipality liability for proprietary torts.

Tucumcari's reliance on § 5–6–20, supra, and the above quotations are misplaced; there has been no implied abolition of the common law rule of liability. *City of Albuquerque v. Garcia,* supra, dealt with immunity from suit created by § 64–25–9, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2) and points out that "court-created immunity already existed except as to proprietary activities." *Galvan v. City of Albuquerque,* supra, dealt with § 64–25–9, supra, and § 5–6–20, supra. *Galvan* points out that these statutes "represent legislative attempts to circumvent and avoid the harsh, unconscionable and unjust results stemming from court-created immunity * * *." Neither § 5–6–20, supra, *Garcia* nor *Galvan* deal with liability for proprietary torts. They are not inconsistent with liability for proprietary torts because of the legislative intent to expand rather than contract municipal liability. Compare *Galvan v. City of Albuquerque,* supra.

■ Common law liability for proprietary torts has not been abolished and continues to exist. The tort must be a proprietary tort; the trial court ruled the tort

was proprietary in this case. Defendant asserts the tort in this case was governmental. There are no express findings as to the type of tort. It is unnecessary to review the findings to determine whether there is support in the findings for the "proprietary" conclusion of the trial court. Such a review is unnecessary because plaintiff's theory of liability is deficient on another ground.

18 McQuillin, Municipal Corporations, § 53.69 (3rd ed. rev.) states:

"To render a municipal corporation liable for the tortious act of an officer or servant, the act must 'have been performed within the scope of employment. Although generally liable for a tortious act of a servant performed within the scope of his duties, in the absence of written law expressly declaring liability, the general rule is that a municipal corporation is not liable to civil action for the completely personal torts of its officers, employees or agents, and that if the wrongful or negligent act was outside the scope of officer's or servant's duties, and was not ratified by the municipality, it is not liable. * * *

* * * * * *

". . . And if the officer or agent was acting within the scope of his authority, it is immaterial that the contract which he made for the thing in connection with which the alleged negligence existed, was not binding on the municipality * * *."

■ "Course of employment" like "scope of authority" is not capable of precise definition. It is largely a question of fact. However, one is not in the course of employment unless the conduct in controversy is of the same general nature as that authorized or incidental to the conduct authorized. See *Lang v. Cruz,* 74 N.M. 473, 394 P.2d 988 (1964).

In considering whether the city manager's fraud was within the course of his employment: (1) We make no distinction between negligent or intentional torts. *Mc-*

*Cauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968); *Taylor v. City of Roswell*, 48 N. M. 209, 147 P.2d 814 (1944). (2) *Montoya v. City of Albuquerque*, supra, holds that "authority" as used in § 14–9–7, supra, has a limited meaning. We do not consider that the "authorized conduct" of an employee has the same limited meaning. (3) However, we do consider that factual examples of unauthorized conduct are pertinent in determining whether the city manager's fraud was in the course of his employment even though the examples are taken from cases involving § 14–9–7, supra.

In *Cherry v. Williams*, 60 N.M. 93, 287 P.2d 987 (1955) some of the wrongful arrests by Officer Stroud had been ordered by Williams, the mayor. In holding that the suit was properly brought against the individual defendants, and not the city, the opinion states:

> "* * * when an officer exceeds his official duties and makes an arrest without authority of the municipality, or in execution of orders thereof, he ceases to act in behalf of the city and he assumes the entire responsibility himself."

In *Salazar v. Town of Bernalillo*, 62 N. M. 199, 307 P.2d 186 (1956) the plaintiff was wrongfully assaulted by a marshal, upon orders of the mayor. In holding that the suit against the town should have been dismissed, the opinion states:

> "When he [the mayor] directed the commission of this assault he exceeded his authority and ceased to act in behalf of the town."

The trial court found that the City Commissioners authorized the city manager to discuss the trade with plaintiff and "report back to said City Commission". The trial court found that he did report back. Thereafter the fraud occurred and the City Commission formally denied any intent to consummate the trade. The trial court found that the city manager *stated* that he had full authority to advise the plaintiff whether the City Commissioners had approved the trade. This finding as to the city manager's claimed authority is to be contrasted with plaintiff's requested finding and conclusion which were refused by the trial court. The trial court refused to find that the false statements were made by the city manager "in his capacity as City Manager". The trial court refused to conclude that the city manager had actual or apparent authority "to represent to people that the City Commissioners had either approved or disapproved business transactions."

The trial court made a specific finding as to the city manager's limited authority in connection with the trade—discuss and report back. The trial court made a specific finding that the city manager claimed full authority but refused to conclude that the city manager had either actual or apparent authority. In addition, the trial court refused to find that the city manager's falsehoods were made in the capacity of city manager. In this state of the record, the trial court's decision fails to support the judgment of liability against Tucumcari because there is no finding of authorized conduct or conduct incidental to authorized conduct. Absent such authority, the city manager's fraud was not on behalf of Tucumcari and was not in the course of employment.

Plaintiff cannot hold Tucumcari liable for the city manager's fraud on the theory of a proprietary tort absent a showing that the tort was committed in the course of the city manager's employment. That showing is missing.

Oral argument is unnecessary. The judgment is reversed.

It is so ordered.

HERNANDEZ and LOPEZ, JJ., concur.